**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| **In re: Frank Scott Dabney** and **Kathryn Harrelle Dabney**  )<br><br>Debtors  )<br>_____  )<br><br>**Frank Scott Dabney** and **Kathryn Harrelle Dabney**,  )<br><br>Plaintiffs,  )<br><br>v.  )<br><br>**Bank of America, N.A.; Specialized Loan Servicing, LLC; Shellpoint Mortgage Servicing;** and **The Bank of New York Mellon;**  )<br><br>Defendants.  ) | Case No.: 13-04227-JW<br>Chapter 13<br><br><br>Adv. Case No.: 17-80037-JW<br><br><br>**Plaintiffs' Objection to Defendant Specialized Loan Servicing, LLC's Motion to Dismiss** |

Plaintiffs Frank Scott Dabney and Kathryn Harrelle Dabney submit the following in objection to Specialized Loan Servicing, LLC's Motion to Dismiss (AP Entry 8):

**Nature of the Case**

This is an action for sanctions, damages, and attorneys' fees based the Defendants' unlawful retention of Plaintiffs' overpayments and the Defendants' false representation to this Court that they are legally entitled to any payment by the Plaintiffs. Defendant SLS has moved to dismiss the Adversary Complaint on a variety of hyper-technical and otherwise misplaced grounds.

**Standard – Rule 12(b)(6) Motion to Dismiss**

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the sufficiency of a complaint. Ostrzenski v. Seigel, 177 F.3d 245 (4th Cir. 1999). In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court should accept the well-pleaded allegations as true, resolve all

reasonable doubts and inferences in the pleader's favor, and view the case in the light most favorable to the non-moving party. Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974 (2007). "The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiffs are not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged." Occupy Columbia v. Haley, 922 F.Supp. 524, 526 (D.S.C. 2013) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

**Argument**

**I.  The Dabneys have adequately pled their causes of action for SLS's violation of the automatic stay.**

The Adversary Complaint gives SLS the "fair notice" it needs to understand what the claims are and grounds upon which they rest.[1] See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Adversary Complaint places SLS on notice of what it did wrong and the Dabneys' claimed damages; any further detail is unnecessary and wasteful of judicial and litigant time and resources. However, the following explanation of the claims and their support in the Adversary Complaint should address the semantic issues of SLS's motion:

A.    First and Second Causes of Action (Violation of Automatic Stay)

In its Motion for Relief from Stay, SLS represented to this Court through vague and conclusory language that it was a "holder" of a claim against the Dabneys:

> [SLS] is the holder of a claim against the Debtors in the amount of $332,779.59 as of the date of this filing, plus interest, costs, and attorney's fees. Copies of the Note and Mortgage are attached hereto and incorporated by reference as Exhibits. Debtors executed a promissory note secured by a mortgage. [SLS], directly or through and [sic] agent, has possession or [sic] the promissory note. [SLS] is the original mortgagee or beneficiary or the assignee of the mortgage. Copies of the

---

[1] The Adversary Complaint was sufficient for Defendant Bank of America, N.A., who filed an answer on May 15, 2017 (AP Entry 17), instead of a motion to dismiss.

>  Note and Mortgage are attached hereto and incorporated herein by reference as Exhibits. The collateral consists of real estate located at 1844 Chelwood Circle, Charleston, SC 29407.

(CP Entry 48, p. 2, ¶ 3; AP Entry 1 ¶ 38.a). It later represented that it was the "servicing agent" that was authorized to bring suit on behalf of Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWABS Inc. Asset-Backed Certificates, Series 2006-17. (CP Entry 48, p. 4, ¶ 1; AP Entry 38.b). As an agent, SLS's right to assert a claim flows from the rights of Bank of New York Mellon as a holder or owner of the Adjustable Rate Note. (AP Entry 1, ¶ 30). However, the Foreclosure Complaint (AP Entry 1-1), even when combined with the assertions of the Motion for Relief from Stay, does not set forth a complete legal "chain of title" of the standing to pursue a claim under the Adjustable Rate Note. (AP Entry 1, ¶¶ 29, 31).[2] Particularly, SLS has not established the amount due and owed, the dishonor of the Adjustable Rate Note, the holder of the Adjustable Rate Note. (AP Entry 1, ¶ 29). See generally S.C. Code § 36-3-101 *et seq*. SLS did not have the standing it represented to this Court in its Motion for Relief from Stay (Entry 48; AP Entry 1, ¶¶ 29, 31).[3] It has demanded and accepted payments from the Dabneys it was not entitled to.[4] (AP Entry 1, ¶ 31). SLS's retention of property of the bankruptcy estate (*i.e.* the Dabneys' mortgage payments) constitutes a violation of the automatic stay. (AP Entry 1, ¶ 32). See In re Weatherford, 413 B.R. 273, 288-89 (Bankr.D.S.C. 2009) (Wrongful retention of property of the bankruptcy estate constitutes a violation of the automatic stay).

Even if SLS had standing to pursue its claim under the Adjustable Rate Note, it has

---

[2] Who, if anyone, has the legal right to enforce the Adjustable Rate Note is a matter to be determined after a period of discovery.
[3] Bank of America, N.A. (SLS's predecessor) and Shellpoint Mortgage Servicing (SLS's successor) likewise lack standing to bring these claims. Accordingly, it is appropriate to collectively refer to the Defendants in the Adversary Complaint.
[4] How many payments and the exact amount paid is a matter for discovery, but the Dabneys would contend that SLS was not entitled to receive any payment.

misrepresented the relevant interest rate both to the Dabneys and to this Court. (AP Entry 1, ¶ 19). SLS was required by the terms of the Adjustable Rate Note to adjust the interest rate based on the 6 month LIBOR + 5.125%, adjusted every six months (AP Entry 1, ¶¶ 15, 16). SLS's change notices show that the interest rate of the Adjustable Rate Note remained a flat 8%, even though LIBOR fluctuated during the life of this loan and the Adjustable Rate Note had no provision for a minimum interest rate. (CP Entry 48, p. 12, § 4(D); AP Entry 1, ¶ 13). For example, the May 12, 2014, change notice SLS filed with this Court[5] on June 6, 2014, states the new interest rate is 8%. However, the 6 month LIBOR at this time was .322; pursuant to the terms of the Adjustable Rate Note, the Dabneys' interest rate should have been 5.5%, but their interest rate instead remained 8%.[6] SLS's misrepresentations of the interest rate have led to a significant overpayment on the Adjustable Rate Note.[7] (AP Entry 1, ¶¶ 21, 22). These overpayments constitute a retention of property of the bankruptcy estate and a violation of the automatic stay. (AP Entry 1, ¶ 23). See In re Weatherford, *supra.*

The Dabneys have also adequately pled these violations of the automatic stay were willful. (AP Entry 1, ¶¶ 24, 33). Section 362(k) of the Bankruptcy Code provides for the recovery of actual damages, including costs and attorney's fees, as well as punitive damages when appropriate, for willful violations of the automatic stay. 11 U.S.C. § 362(k). For a debtor to recover damages for an alleged willful violation of the automatic stay, the debtor must establish five elements, all of which are present here: "'(1) that a bankruptcy petition was filed, (2) that the debtors are 'individuals' under the automatic stay provision, (3) that the creditors received notice of the

---

[5] *Available at* https://ecf.scb.uscourts.gov/doc1/162116200539 (last visited May 23, 2017).
[6] Bank of America, N.A. (SLS's predecessor) and Shellpoint Mortgage Servicing (SLS's successor) have similarly misrepresented the interest rate in their change notices. Accordingly, it is appropriate to collectively refer to the Defendants in the Adversary Complaint.
[7] The exact amount of the overpayment will need to be determined in discovery.

petition, (4) that the creditors' actions were in willful violation of the stay, and (5) that the debtor suffered damages.'" Weatherford at 284.

All of these elements are present for the first two causes of action. The first two elements are self-evident from the complaint, and SLS appears to concede them in its motion to dismiss. (AP Entry 1, p.1; AP Entry 8, p. 3). The third element is also self-evident, as SLS is a represented creditor in the underlying core proceeding. Knowledge of the bankruptcy is the legal equivalent of knowledge of the stay. Weatherford at 284. The Dabneys also specifically plead knowledge of the automatic stay for the first and second causes of action. (AP Entry 1, ¶¶ 24, 33). Regarding the fourth ground, the Fourth Circuit has determined that to constitute a willful violation under the Bankruptcy Code, the creditor need not act with specific intent, but must only commit an intentional act with knowledge of the automatic stay. Weatherford at 285. The Dabneys have specifically pled this conduct in the first and second causes of action. (AP Entry 1, ¶¶ 24, 33). Finally, the Dabneys have specifically pled damages in both causes of action. (AP Entry 1, ¶¶ 25, 26, 34, 35).

B.    Third Cause of Action (Contempt)

The Dabneys have also pled a cause of action for contempt of court. "[T]he retention of an improved position gained by the creditor in violation of the stay is itself a continuing violation of the stay, and done knowingly is grounds for contempt." In re LaTempa, 58 B.R. 538, 542 (Bankr.W.D.Va. 1986) see also 11 U.S.C. § 105(a) (contempt power). The willful violations described above constitute a violation of this Court's order (*i.e.* the automatic stay) worthy of contempt. (AP Entry 1, ¶ 37).

SLS has also made false statements to this Court regarding its standing to bring its claim and the amount of the claim. (AP Entry 1, ¶ 38). Making false or fraudulent statements to the

Bankruptcy Court is sanctionable conduct under the Bankruptcy Code. See In re Varona, 388 B.R. 705, 717 (Bankr.E.D.Va. 2008) (contempt for false or fraudulent claim); 11 U.S.C. § 105(a).

SLS has violated other relevant orders. On May 2, 2011, former Chief Justice Toal issued an administrative order governing conduct of lenders both inside and outside of mortgage foreclosure actions. In re Mortgage Foreclosure Actions, 720 S.E.2d 908 (S.C. 2011). This order holds:

> The Court having jurisdiction over the foreclosure action shall hear and determine any dispute concerning any party's compliance with this order, including without limitation, the failure of any party to act in good faith in complying with the terms of this order. In the event the Court determines that any party to the foreclosure action, or their acting agent, has failed to comply with the terms of this order, or has not attempted to reach an agreement for foreclosure intervention in good faith, the Court may, in its discretion, impose such sanctions as it determines to be reasonable and just under the circumstances, including without limitation, the assessment of reasonable attorneys' fees and costs against the culpable party.

Id. at 908. By issuing the Settlement Order, this Court has taken jurisdiction over the foreclosure intervention process. SLS's false and fraudulent statements constitute acts of bad faith that are sanctionable under In re Mortgage Foreclosure Actions. (AP Entry 1, ¶ 39).

On June 15, 2010, the Central District of California issued a Consent Judgment and Order in FTC v. Countrywide Home Loans, Inc., *et al.*, 2:10-cv-04193-JFW-SS ("Consent Order"). On or about March 22, 2012, the court issued a Supplemental Consent Order in this case ("Supplemental Consent Order").[8] This order enjoined SLS's predecessor from, *inter alia*, filing proofs of claim in connection with customers' Chapter 13 Bankruptcy proceedings without providing copies of loan instruments and a detailed itemization of all amounts claimed. (Supplemental Consent Order, p. 2). SLS, as the purported subservicer of Bank of America, N.A.

---

[8] *Available at* https://www.ftc.gov/sites/default/files/documents/cases/2012/02/120209countrywideorder.pdf (last visited May 24, 2017).

(the successor to Countrywide Home Loans, Inc.) is also subject to sanction for violation of this order.

**II.    The Dabneys have reserved their right to bring their claims before this Court.**

SLS argues that the confirmed Chapter 13 plan prohibit the Dabneys' claims under the doctrine of *res judicata*. However, the Chapter 13 Plan contains the following reservation of rights language:

> **V. PROPERTY OF THE ESTATE, STATUS AND OBLIGATIONS OF THE DEBTOR AFTER CONFIRMATION:** ...Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor.

(CP Entry 35, p. 5). "The Reservation Language in the form Chapter 13 plan was drafted and promulgated by this Court at the suggestion of a bar committee which included bar members representing both debtors and creditors and the chapter 13 trustees." In re Russo-Chestnut, 522 B.R. 148, n.10 (Bankr.D.S.C. 2014),

In Russo-Chestnut, this Court examined the Chapter 13 form reservation of rights language and found it to be sufficient to preserve a debtor's rights to pursue pre-confirmation causes of action. Russo-Chestnut was a Chapter 13 proceeding where the debtors sought to advance multiple causes of action against their mortgage lender related to the lender's refusal to complete a modification of the debtor's mortgage loan. The conduct at issue took place pre-confirmation, and the lender sought to dismiss the action under the doctrine of *res judicata*. This Court, rejecting the reasoning of In re Nix, C/A No. 10-01103-HB, 2012 WL 27667 (Bankr.D.S.C. 2012)[9], held:

> …the proposition that confirmation of a Chapter 13 plan using the Court's approved form plan Reservation Language bars any and all pre-confirmation causes of action owned by a debtor, the undersigned respectfully disagrees and finds this approach too broad brushed. The preclusion of a debtor's causes of action related to any pre-

---

[9] SLS cites this unpublished decision as authority in its motion.

    confirmation conduct or event appears to be contradicted by the express provisions
    of the form plan.

Russo-Chestnut at 159-60 (footnote removed). The, the Dabneys have asserted claims related to their mortgage that were preserved by the Reservation Language of the Chapter 13 plan, and thus *res judicata* is inapplicable.

  SLS also argues that the August 4, 2014 Settlement Order (CP Entry 53) bars the Dabneys' claims under judicial estoppel and the law of the case doctrine. However, the Settlement Order explicitly states that the payments made in this settlement will be made "in accordance with the terms of the…chapter 13 plan." (CP Entry 53, p. 2). Just as in Russo-Chestnut, the Reservation Language of the Chapter 13 plan prevents the application of judicial estoppel, as the claims were explicitly preserved. Russo-Chestnut at 163-64. SLS's law of the case argument likewise fails, as it is based on the same Chapter 13 plan and Consent Order that has preserved the Dabneys' claims.

  Additionally, the Dabneys expressly preserved and notified all parties of this potential claim in their Amended Schedule A/B (CP Entry 70, pp. 13-14) and also informed[10] all parties via their Application to Employ the undersigned counsel (CP Entry 60, ¶ 2). SLS, a creditor in the core proceeding, was served with these documents without objection.

  Furthermore, the Settlement Order and the Adversary Complaint do not contradict one another. A careful reading of the Certification shows that the Dabneys only agreed to "the amounts, method, and timing of payments, and consequences of default". (CP Entry 53, p. 3). The Dabneys did not specifically agree to the validity of these payments or validity of the debt; they only agreed

---

[10] "Applicants wish to employ Robert Varnado…and Jason Luck…as attorneys to pursue a lawsuit alleging misconduct on the parts of Lendmark Financial [Services], Inc., Bank of New York Mellon, Mortgage Electronic Registration Systems, Inc., Bank of America, N.A., Specialized Loan Servicing, LLC, Core Logic, Inc., and/or Brock and Scott, PLLC in the origination, management, servicing, and other aspects of the mortgage loan for 1844 Chelwood Circle, [Charleston,] South Carolina."

to make new, higher payments to avoid SLS's threatened foreclosure. While the Settlement Order contains a waiver of rights, the only party who agreed to waive rights in the Settlement Order is SLS, not the Dabneys: "Movant [*i.e.* SLS] agrees to waive any claim under 11 U.S.C. §503(b) or §507(b) as a result of this Order." (CP Entry 53, p. 3).

Finally, the Settlement Order is the product of fraud on this Court. As detailed in the Adversary Complaint (AP Entry 1, ¶ 38), SLS made false representations in order to procure the Settlement Order. The United States Supreme Court has long recognized the inherent equity power of courts to set aside a judgment whenever its enforcement would be "manifestly unconscionable" because of "fraud upon the court." See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244-45, 64 S.Ct 997, 88 L.Ed. 1250 (1944) (citing numerous cases) (internal quotations omitted).

## **Conclusion**

SLS's motion to dismiss exalts form over substance, delays the resolution of this action, and wastes scarce judicial resources. The motion hearkens to a "…primitive stage of formalism, when the precise word was the sovereign talisman and every slip was fatal." Wood v Duff-Gordon, 222 N.Y. 88, 91, 118 N.E. 214 (N.Y. 1917) (Cardozo, J.). SLS's motion should be denied[11] expeditiously to allow this action to be determined on its merits.

---

[11] If this Court grants all or any part of SLS's motion, the Dabneys move this Court for leave under Rule 15 to amend their pleadings or submit supplemental pleadings to address any deficiency. To the extent any of movant's arguments may not appear to be addressed by this Response, the Dabneys not concede any of the movant's arguments and reserve the right to oppose them in any supplemental submissions and/or at hearing of this matter.

Dated: 5/26/2017

/s/ Jason Scott Luck
Jason Scott Luck (Fed. Id. 9696)
jluck@garrettlawsc.com
Garrett Law Offices, LLC
1075 E. Montague Ave.
North Charleston, SC 29405
843.554.5515 (phone)
843.747.3198 (telefax)

and

Robert B. Varnado (Fed. Id. 6478)
rvarnado@brown-varnado.com
Brown & Varnado, LLC
103 Church Street
Mt. Pleasant, SC 29464
843.737.7300 (phone)
843.654.5109 (telefax)

**Attorneys for Plaintiffs**